MILWAUKEE HARVESTER COMPANY *vs.* P. H. FINNEGAN and another.

April 24, 1890.

Joint Agents—Liability for Each Other—Account Rendered by One.—
Where two or more persons contract to execute a private agency together, they are jointly liable each for the acts of the other, and are, as to the principal, *quasi* partners in the agency business, although, as between themselves, the one has no interest in the business, which is wholly transacted by the other. An account, within the scope of such business, rendered or stated by the one during the continuance of the *quasi* partnership, is equivalent to an account rendered by the firm, and is equally binding on both.

Appeal by plaintiff from an order of the district court for Sibley county, *Edson*, J., presiding, refusing a new trial after verdict in favor of defendant Patrick Duffy, who alone appeared and defended.

*R. A. & C. F. Irwin*, for appellant.

*W. H. Leeman*, for respondent.

MITCHELL, J. We think the trial judge, in his charge to the jury, failed to distinguish between what will constitute a partnership of parties *inter se*, and what constitutes a partnership as to third persons, and also overlooked the rules governing the liability of joint agents or factors to their principal; and that, as a probable consequence of these errors, the verdict is against the evidence. In the spring of 1887 the plaintiff as one party, and the two defendants jointly as the other party, entered into a contract by which the former appointed the latter its joint agents for that season to handle and sell its farm machinery on commission in certain counties in this state, the defendants agreeing to sell it for a stipulated compensation, and to return the proceeds of sales (less their commissions) to the plaintiff, the cash as soon as received, and the notes whenever called for, and to be ready to make a full and complete settlement for the season's business by October 1st. The contract was renewed, or, rather, a similar contract was made, in the spring of 1888, for the following season. Pursuant to these contracts, the plaintiff shipped to defendants, at Shakopee, in 1887 and 1888, a large number of machines; which, however, at Finnegan's request, were consigned to him individually, he giving as a reason that Duffy did not want it known that he was interested in the business. The business was managed exclusively by Finnegan; the defendant Duffy, who resided on a farm some distance from town, taking no active part. Indeed, it appears from the evidence that, as between Finnegan and Duffy, the latter in fact had no interest in the business, but merely executed the contract, and assumed the liability of joint agent with Finnegan, in order to give him credit, and enable him to secure the benefits of an agency to handle plaintiff's machines. It does not appear that plaintiff knew this fact, but, for reasons which will be suggested hereafter, it is entirely immaterial whether it did or not. In the fall of 1887 plaintiff's agent and Finnegan had a full accounting and settlement for the season's business, at which it was ascertained and agreed that there was a balance of $325 due the plaintiff. In the fall of 1888 they had a similar settlement and accounting, at which it was ascertained and mutually agreed that there was due the plaintiff, including the amount found due the previous year, a balance of

$703.40. Duffy personally took no part in these settlements, and in fact knew nothing about them. In this action against the two defendants to recover this balance as an account stated, Duffy, who alone answered, did not attempt to surcharge this accounting; his defence on the trial being that he was not in fact a partner with Finnegan, and had no interest in the business, and, not having personally taken any part in the accounting, there was as to him no account stated. The court instructed the jury that the whole case turned upon the question whether Finnegan and Duffy were partners; that if Duffy was not a partner, but simply surety for Finnegan, the plaintiff could not recover, for the reason that the action was upon an account stated, and that Duffy took no part in the settlement, and never agreed to any account stated. In view of the evidence, this was equivalent to instructing the jury to find for the defendant, and was clearly error.

It is familiar law that where two or more persons undertake to execute a private agency together, they are jointly liable each for the acts of the other; nor is it any defence that one of them wholly transacted the business with the knowledge of the principal. Each is liable for the whole, if they jointly undertake the agency, notwithstanding an agreement between themselves to the contrary, or that one shall have all the profits. As to all matters within the scope of this agency, Duffy and Finnegan were, as to plaintiff, *quasi* partners. The fact that Duffy had no interest in the business, but merely lent his name for Finnegan's benefit, even if known to plaintiff, would not affect his liability or alter his relation to plaintiff. By express contract with plaintiff, he voluntarily assumed the obligations of joint agent with Finnegan, and of a *quasi* partner with him in the business which was the subject of the contract. The fact that he did so without having, as between himself and Finnegan, any interest in the business, did not induce credit any the less. On the contrary, the very fact that he contracted to assume these relations and obligations constituted the very basis of the credit given to and the trust confided in him and Finnegan as plaintiff's joint agents. Whart. Ag. § 142; *Godfrey* v. *Saunders*, 3 Wils. 73; *Brown* v. *Leonard*, 2 Chit. 120. Therefore, upon the undisputed facts, Duffy and

Finnegan were, as to plaintiff, *quasi* partners in this agency business. The statement of this account by Finnegan was within the scope of this business,—in fact was expressly required by the terms of the contract,—and it was stated during the existence of the *quasi* partnership. An account rendered or stated by one partner, under such circumstances, is equivalent to an account rendered by the firm. 1 Lindl. Partn. *128. Hence, unless surcharged, the account stated by Finnegan is binding on Duffy, although as between themselves they might not have been partners.

Order reversed.